**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DWIGHT WALKER,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**SPORTS RESEARCH CORPORATION,**<br><br>Defendant. | Case No. _______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dwight Walker ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendant Sports Research Corporation ("Sports Research" or "Defendant") for violations of state statutes and common law doctrines, seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees. Plaintiff alleges the following upon personal knowledge as to himself and his own actions, and upon information and belief as to all other matters, including the investigation of his counsel:

## NATURE OF THE ACTION

1. This class action challenges Defendant's false and misleading marketing of its allulose-sweetened D3 + K2 Gummies, Vitamin C Sour Gummies, and Organic Apple Cider Vinegar Gummies bearing the "Sugar-Free" labeling described below (collectively, the "Products" or "Gummies"), sold through retail stores and online retailers nationwide.

2. Plaintiff and members, who have purchased these Products, bring this Action because of material representations which are false and misleading: Defendant market and advertise the Products as "Sugar-Free," (the "Representations"). However, unbeknownst to reasonable consumers, the Products do in fact contain sugar in the form of allulose. Allulose is a

monosaccharide, and therefore sugar under the applicable federal and Illinois labeling standards. It is not present in trace amounts—it is a predominant ingredient by weight. The Products' respective ingredient statements list allulose without an asterisk referring to a statement below the ingredient list that it "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar." The challenged omission is distinct from the separate quantitative condition for a "sugar free" claim.

3. Defendant made the Representations to induce health-conscious consumers, like Plaintiff, to purchase the Products. But these representations are categorically false and misleading, because Defendant omits the required ingredient-specific disclosure concerning allulose. Images of the Products at issue appear immediately below. Each Product bears a prominent "Sugar-Free" front-label claim:










4. For as long as consumable goods have been sold, "healthwashing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some

cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits, but pose health hazards to individuals who limit their sugar intake due to health-related conditions such as diabetes, hypertension, obesity, cardiovascular issues, or other health concerns. To compound matters, the misrepresentations made on the Products are not only potentially harmful, but command a price premium consistent with these misrepresentations that Plaintiff and class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

5. Against this backdrop, Plaintiff, subclass and class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the misleading Representations and omitted ingredient disclosure, Plaintiff and the Class Members paid a price premium they otherwise would not have paid or purchased Products they otherwise would not have purchased.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

7. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant period. At that time, Defendant was engaged in business activities in Illinois.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Product in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

*Plaintiff Dwight Walker*

9. Plaintiff Dwight Walker is an individual consumer who, at all times material hereto, is and was a resident and citizen of Waukegan, Illinois.

10. Mr. Walker purchased Sports Research branded "Sugar-Free" Vitamin-C Gummies during the relevant statutory limitations period. Plaintiff purchased the Product at a Walmart store in Chicago, Illinois.

11. Mr. Walker reviewed and relied upon the Product's "Sugar-Free" Representation when purchasing it. He understood the claim to mean that the Product contained no sugar. He paid a price premium and would not have purchased the Product but for the "Sugar-Free" claim. Had the label disclosed that allulose adds sugar, even in an amount described as negligible, he would not have purchased the Product or would have paid less for it.

*Defendant*

12. Defendant Sports Research Corporation is a citizen of California, where it is incorporated and maintains its principal place of business.

13. Defendant sells the Products throughout the United States, including Illinois. The Products, including those purchased by Plaintiff and the proposed class members, are available at various retail and grocery stores throughout the United States, including Illinois. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of the "Sugar-Free" Products to consumers nationwide, including Illinois.

## COMMON FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay More for Products That Contain No Sugars

14. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[1]

15. For decades, federal health authorities have recommended limiting added sugar intake.[2] In light of this clear, long-standing guidance from medical authorities, consumer

[1] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[2] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; U.S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[3]

16. Food and beverage manufacturers are aware of consumer demand for products marketed as "sugar free." Plaintiff alleges that the Representations allowed Defendant to charge a premium for the Products and materially influenced his purchase decision. Defendant prominently placed the claims on the front principal display panels of the Products' packaging.

17. Defendant has capitalized on that demand. It markets Products containing allulose while labeling and advertising them as "Sugar-Free." The challenged labels omit the asterisk and corresponding ingredient disclosure required by 21 C.F.R. § 101.60(c)(1)(ii).

**Defendant's False and Misleading Representations**

18. Defendant manufactures, markets, and sells its "Sugar-Free " Gummies. The Products are sold at major retailers throughout Illinois and the United States, including Amazon, Target, and Walmart, as well as grocery stores.

19. On the front labels, Defendant prominently represents that the Products are "Sugar-Free." The labels also declare 0 g Total Sugars on the Supplement Facts panels and identify allulose in the ingredient statements. The D3 + K2 panel reproduced below is one example. It lists allulose without an asterisk referring to a statement below the ingredient list that the ingredient adds a trivial, negligible, or dietarily insignificant amount of sugar. The Vitamin C Sour Gummies and Organic Apple Cider Vinegar Gummies labels likewise list

[3] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

allulose without that disclosure.[4]



**Supplement Facts**

Serving Size: 2 Gummies
Servings Per Container: 30

| | Amount Per Serving | % DV |
|---|---|---|
| Calories | 5 | |
| Total Carbohydrate | 6 g | 2%** |
| Dietary Fiber | 5 g | 17%** |
| Total Sugars | 0 g | † |
| Sugar Alcohols | 0 g | † |
| Vitamin D (as D3, cholecalciferol) (from lichen) (VEGADELIGHT®) | 125 mcg (5000 IU) | 625% |
| Vitamin K2 (as menaquinone-7) (MK-7 from chickpea) | 100 mcg | † |

** Percent Daily Values are based on a 2,000 calorie diet.
† Daily Value (DV) not established.

**OTHER INGREDIENTS:** Inulin syrup, allulose, pectin, natural flavors, citric acid, fruit juice (for color).

SPORTS RESEARCH®

20. The Representations appear on the Products' packaging and in listings on Amazon.com, Target.com, Walmart.com, and other online platforms. The screenshots below show the D3 + K2 Gummies on Walmart, followed by Vitamin C Gummies listings on Amazon and Target:[5]

---

[4] Sports Research, Vegan D3 + K2 Gummies, https://www.sportsresearch.com/products/vitamin-d3-k2-gummies (label corresponding to the D3 + K2 image reproduced in this Complaint); Sports Research, Organic Apple Cider Vinegar Gummies, https://www.sportsresearch.com/products/apple-cider-vinegar-gummies; Target, Sports Research Vitamin C 500 mg Gummies, https://www.target.com/p/-/A-94939164 (label images reviewed September 19, 2026).
[5] Walmart, Sports Research Vitamin D3 + K2 Gummies, https://www.walmart.com/ip/579743388; Amazon, Sports Research Vitamin C Gummies, https://www.amazon.com/dp/B08RPC7KG5; Target, Sports Research Vitamin C 500 mg Gummies, https://www.target.com/p/-/A-94939164 (retailer screenshots reproduced in this Complaint).


Pickup or delivery?
Schenectady, 12306 • Schenectady S...
Search everything at Walmart online and in store
Departments
Services
Rollbacks & More
Restaurants
Halloween
Get it Fast
Pharmacy
New Arrivals
The Baby Event
Game Day
Best seller
Visit the Sports Research Store
Sports Research Vitamin D3 + K2 Gummies, Plant-Based, 60 count
(4.7) 124 ratings
SPORTS RESEARCH
D3 + K2
GUMMIES
Sugar-Free
125 MCG (5000 IU) D3 | 100 MCG K2
SUPPORTS BONE & IMMUNE HEALTH
VEGAN | GLUTEN-FREE | NON-GMO
60 Gummies | Dietary Supplement
Key item features
• D3 & K2 - BETTER TOGETHER: On their own, Vitamins D3 and K2 are essential micronutrients, but together, they're an essential team. Vitamin D3 helps your body absorb calcium, while vitamin K2 directs calcium to your bones.* Now that's teamwork!
• SWEETER TASTE, SUGAR FREE: Get the best of both worlds with Sports Research D3 & K2. Our new gummies offer a sweeter form now with a sugar free, and sugar alcohol free, formula that provides 125mcg (5000IU) of Vegan D3 with 100mcg of Vitamin K2 (as MK7, the form of K2 with the highest bioavailability) for stronger bones and immune system support so that you can shine your brightest.*


amazon
Deliver to Chicago 60601
Health, Household & Baby Care
Search Amazon
All
Early Prime Deals
Groceries
Coupons
Pharmacy
Automotive
Amazon Home
Prime
Registry
Video Games
Whole Foods
Baby
New Releases
Audible
Health & Personal Care
Household Supplies
Vitamins & Diet Supplements
Baby & Child Care
Health Care
Sports Nutrition
Sexual Wellness
Health & Wellness
Medical Supplies & Equipment
FSA Eligible Items
Nutrition that tastes like a treat
LLAMA NATURALS
Health & Household › Vitamins, Minerals & Supplements › Vitamins › Vitamin C
Vitamin C Gummies
500 mg of Vitamin C Per Sugar-Free Gummy
Supports Immune Health*
No Sugar Alcohols
Non-GMO, Vegan & Gluten-Free
Sports Research® Vitamin C Sugar-Free Gummies 500mg, 60 Count
Immune Support & Antioxidant Gummies | Sugar Free, Vegan, Gelatin Free, Non-GMO
Visit the Sports Research Store
4.6 (543)
Amazon's Choice
700+ bought in past month
$24.95 ($0.42 / count)
Get $50 off instantly: Pay $0.00 upon approval for Amazon Visa.
Get Fast, Free Shipping with Amazon Prime
Style: Gummy
$24.95 ($0.42 / count)
$28.99 ($0.16 / count) $34.99
$22.95 ($0.10 / count)
Bundles with this item
Top highlights



Categories Deals Pickup & delivery What can we help you

Shop all Sports Research

**Sports Research Vitamin C 500mg Gummies - 60ct**



**Already have this product?**
**Snap a pic for all to see!**

Upload photo

**About**

**Details**

**Highlights**

- Sweeter Antioxidant Support*: Vitamin C is a popular antioxidant that helps support healthy cells and immune function as part of your daily routine.*
- Delicious Gummy Form: Enjoy Vitamin C gummies in a sour orange gummy that delivers the same nutrients as capsules, with better taste.
- Sugar Free & Sugar Alcohol Free: A sweeter way to supplement with 500 mg of Vitamin C per gummy, made without sugar or sugar alcohols.
- Quality Assured: Non-GMO Tested, Certified Vegan, gluten-free, and manufactured in cGMP-compliant facilities; third-party tested for quality assurance.

21. Defendant likewise disseminates the Representations through online shopping platforms such as Instacart. As depicted below, the Product is promoted as being "Sugar Free":

[6]




22. The unqualified "Sugar-Free" Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "Sugar-Free," "Sugar Free ," and "0g Sugar," and federal and Illinois law prescribe an objective standard governing when those terms may be used. The Products' "0g" Supplement Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Products do, in fact, contain sugar.

23. "Sugar-Free" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, or when a product bearing a "sugar free" claim contains an ingredient that is a sugar, that ingredient must carry an asterisk linked to one of the specified statements below the ingredient list.

[6] https://www.instacart.com/store/products/109055891-sports-research-vitamin-c-sugar-free-dietary-supplement-gummies-60-each

**Allulose Is a Sugar**

24. As a monosaccharide, allulose falls squarely within the Food and Drug Administration's ("FDA") codified definition of sugar. See 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). The FDA has stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[7] No such rulemaking ever occurred.

25. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. No. 25-2087, 2026 WL 2150193 (7th Cir. July 27, 2026). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

26. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[8] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[9] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[10]

---

[7] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[8] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[9] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[10] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

27. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[11] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[12]

28. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

29. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate "Sugar-Free," "Sugar Free ," and "0g Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

30. The "Sugar-Free," "Sugar Free ," and "0g Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged

[11] U.S. Food & Drug Administration, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1, 6–8 (Oct. 2020), https://www.fda.gov/media/123342/download.
[12] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

message and are also alleged as misleading under applicable state law.

31. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

32. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "Sugar Free " nutrient content claims at issue here. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "Sugar Free ," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."

33. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These requirements are cumulative. Even assuming the Products satisfy subsection (i), they must independently satisfy subsection (ii). Merely listing allulose as an ingredient does not supply the required asterisk and explanatory statement. Conversely, a disclaimer would not excuse failure to satisfy the separate quantitative condition or other applicable requirements.

34. The Products do not satisfy subsection (ii). Allulose is a sugar ingredient and

appears in the ingredient statements, but its listing is not followed by an asterisk linked to any of the three prescribed statements below the ingredient list. Footnotes concerning Daily Values in the Supplement Facts panels do not identify allulose as adding sugar and do not provide the required ingredient disclosure. Plaintiff therefore alleges that the Products cannot lawfully bear the challenged "Sugar-Free" claims in their present form, regardless of whether subsection (i) is otherwise satisfied.

35. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

36. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws, including Illinois state law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards Illinois has adopted and the conduct that renders the Products misbranded under Illinois law.

**Defendant's Conduct Violates Illinois' Food Labeling Laws**

37. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., prohibits the misbranding of food sold in Illinois. Under 410 ILCS 620/11(a), "[a] food is misbranded" if "its labeling is false or misleading in any particular."

38. In determining whether labeling or advertising is misleading, Illinois law requires consideration of "not only representations made or suggested by statement, word, design, device, sound or any combination thereof," but also whether the labeling or advertising fails to disclose material facts in light of the representations made. 410 ILCS 620/2.11.

39. The IFDCA also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to

this Act takes effect in this State on the date it becomes effective as a Federal regulation.”). Federal regulations provide that “sugars” include “all free mono- and disaccharides.” 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide and therefore constitutes a sugar under this regulatory definition.

40. Section 101.60(c)(1)(ii) requires an ingredient that is a sugar to be identified by an asterisk referring to one of the prescribed statements below the ingredient list when a product bears a “sugar free” claim. This disclosure condition applies independently of whether the separate quantitative condition is met.

41. Defendant prominently represents on the Products’ labeling and packaging that the Products are “Sugar-Free.” Yet the ingredient statements list allulose without the required asterisk or a corresponding statement that it adds a trivial, negligible, or dietarily insignificant amount of sugar.

42. Defendant’s Representations are misleading because they convey that the Products contain no sugar while omitting the required qualification concerning a sugar ingredient. The omission deprives consumers of information material to evaluating the “Sugar-Free” claims. *See* 410 ILCS 620/2.11.

43. Accordingly, Plaintiff alleges that the Products are misbranded under Illinois law because their unqualified “Sugar-Free” claims and omitted ingredient disclosure make the labeling false or misleading. This theory does not depend on alleging a particular number of grams of allulose per serving.

**<u>Reasonable Consumers Would Be Misled By Defendant’s Deception.</u>**

44. Reasonable consumers may rely on the conspicuous “Sugar-Free” claims without independently researching the chemical classification of allulose. Even consumers who read the

ingredient statements receive no asterisk-linked disclosure that allulose adds sugar. Merely naming allulose does not communicate the qualification prescribed by § 101.60(c)(1)(ii).

45. Defendant's deception is especially misleading because a consumer who reviews the Nutrition Facts table would encounter a 0g Total Sugars disclosure, even though the Product contains eight to thirteen grams of allulose (a sugar) per serving—at least twenty-six times the 0.5-gram cutoff for a "sugar free" claim.

46. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

47. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Defendant controlled the labeling and identified allulose in the ingredient statements. On information and belief, Defendant knew that its labels omitted the asterisk and qualifying statement required by § 101.60(c)(1)(ii), that consumers would rely on the unqualified "Sugar-Free" claims, and that those claims enabled it to sell the Products at a premium.

48. Defendant, as the marketer and distributor of the Products, controlled or participated in making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that the labeling satisfied all applicable conditions for their use. Despite knowing that consumers reasonably rely on the Representations, Defendant continued using them without the required ingredient disclosure,

causing consumers to buy or overpay for the Products.

**Defendant's Sugar Free Claims Injured Plaintiff and the Class**

49. Defendant omitted the ingredient-specific disclosure that would tell consumers that allulose adds sugar. Plaintiff alleges that this omission was material in light of the prominent "Sugar-Free" claims and caused him and the Class Members to purchase the Products or pay more than they would have paid had the required qualification appeared on the labels.

50. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiff and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff and members of the Illinois Subclass, purchased misbranded Products that could not lawfully have been sold in Illinois.

51. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**CLASS ALLEGATIONS**

52. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following classes (collectively, the "Classes," whose members are referred to as "Class Members"):

**Illinois Class**:

> All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products bearing the challenged "Sugar-Free" labeling described herein for their personal use ("Illinois Class").

**Multi-State Consumer Protection Class**:

> All persons in the States of Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Products bearing the challenged "Sugar-Free" labeling described herein for their personal use ("Multi-State Consumer Protection Class" or "Multi-State Class").[13]

53. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

55. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

---

[13] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). Plaintiff has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

56. **Numerosity**: A class action is a superior method for the fair and efficient adjudication of this controversy, as the members of the Classes are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

57. **Commonality:** Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products' ingredient statements omitted the asterisk and qualifying statement required by 21 C.F.R. § 101.60(c)(1)(ii);

c. Whether reasonable consumers would understand Defendant's unqualified "Sugar-Free" Representations to mean the Products contained no sugar;

d. Whether the Representations and omitted ingredient disclosure were material to consumers' purchase decisions;

e. Whether the Products are misbranded under federal law and, with respect to the Illinois Class, Illinois law;

f. Whether Defendant was unjustly enriched at the expense of Plaintiff and the Illinois Class as a result of the conduct alleged herein;

g. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiff and the Class Members are entitled to statutory damages where

authorized by the applicable state statute; and

i. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

58. **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all members of the Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

59. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Classes in that Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

60. Plaintiff is not subject to any individual defenses unique from those applicable to other Class Members or the Classes in their entirety. Plaintiff anticipates no management difficulties in this litigation.

61. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member may make it impractical for members of the Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

62. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

63. This class action is also appropriate for certification because Defendant has acted

or refused to act on grounds generally applicable to Class Members, thereby supporting the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes in their entirety.

64. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entirety, not on facts or law applicable only to Plaintiff.

65. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

66. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiff and the Multi-State Consumer Protection Class[14])

67. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Plaintiff brings this Count on behalf of himself and the Multi-State Consumer Protection Class against Defendant.

[14] Plaintiff reserves the right to amend this list of states after discovery.

69. The Consumer Fraud Acts of the States in the Multi-State Consumer Protection Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. Illinois (815 ILCS 505/1, *et seq.*);

b. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

c. Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

d. Minnesota (Minn. Stat. § 325F.67, *et seq.*);

e. Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

f. New Jersey (N.J. Stat. § 56:8-1, *et seq.*);

g. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

h. Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

70. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

71. Defendant's uniform labeling and marketing Representation of the Product were deceptive and materially misleading.

72. Given Defendant's position in the dietary supplement industry and its growing popularity as an established and trustworthy national (even international) brand, Plaintiff and reasonable consumers trusted and relied on Defendant's Representations, sustaining damages in an amount to be proven at trial.

73. In addition, Defendant's conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

74. Plaintiff and the other Members of the Multi-State Consumer Protection Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the

Multi-State Consumer Protection Class because Plaintiff and Members of the Multi-State Consumer Protection Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

**COUNT II**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Class)**

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

76. Plaintiff brings this cause of action on behalf of himself and the Illinois Class Members against Defendant.

77. Plaintiff and the Illinois Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

78. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

79. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

80. Plaintiff and the Illinois Class Members are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

81. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

82. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or

employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

83. Defendant's conduct constitutes unfair and deceptive acts and practices under the ICFA. Defendant marketed the Products as "Sugar-Free" while omitting the required disclosure that the listed allulose ingredient adds sugar. The unqualified Representations and material omission were likely to mislead reasonable consumers.

84. Plaintiff and the Illinois Class Members reasonably relied on the "Sugar-Free" Representations when purchasing the Products. The required disclosure would have qualified those claims by informing them that an ingredient adds sugar.

85. Defendant's misconduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1, et seq, by representing that the Product has characteristics or benefits that it does not have.[15] Defendant also did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

86. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

87. Defendant's uniform marketing claims were deceptive and materially misleading. Defendant named and labeled the Products in a way that would most impact consumer choices and gain market share. Defendant knew that consumers purchasing the Products would reasonably understand the "Sugar Free " representations to mean that the Products contained no sugar.

---

[15] See 815 ILCS 505/2.

88. As a direct and proximate result of Defendant's ICFA violations, Plaintiff and the Illinois Class Members suffered actual economic losses. Had the labels disclosed that allulose adds sugar, they would have paid less for the Products or would not have purchased them.

89. Based on Defendant's unfair or deceptive acts or practices, Plaintiff and the Illinois Class Members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Illinois Class)**

90. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91. Plaintiff brings this Count on behalf of himself and the Illinois Class.

92. This claim is brought under the law of the State of Illinois.

93. This claim is brought in the alternative to the other Counts. Illinois law and the Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

94. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling Defendant's Products while misrepresenting and omitting material facts, including by making the labeling Representation alleged herein.

95. As a direct result of Defendant's deceptive conduct, it obtained unjust and inequitable benefits at the expense of Plaintiff and the Illinois Class Members. Defendant's conduct violated fundamental principles of justice, equity, and good conscience. It would therefore be inequitable for Defendant to retain the benefits derived from sales induced by the misleading Representations and omitted disclosure.

96. Plaintiff and the Illinois Class Members conferred financial benefits upon Defendant through retail purchases of the Products, which materially differed from the Representations made by Defendant.

97. Plaintiff and the Illinois Class Members seek the imposition of a constructive trust over the profits improperly obtained by Defendant, from which Plaintiff and the Class may obtain restitution and disgorgement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant, as follows:

a. Certifying the Illinois and Multi-State Classes pursuant to Federal Rule of Civil Procedure 23, and appointing Plaintiff and his counsel to represent the Classes;

b. Declaring that Defendant's conduct constitutes:

i. A violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.);

ii. Violations of the other state consumer protection statutes asserted herein;

iii. Unjust enrichment;

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class Members are entitled;

d. Awarding equitable relief, including injunctive relief, restitution, and/or disgorgement of benefits unjustly retained by Defendant, to the extent authorized by applicable law;

e. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

f. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

g. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: September 24, 2026

Respectfully Submitted,

*/s/ Kevin Laukaitis*
**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: *klauka`itis@laukaitislaw.com*

*Attorneys for Plaintiff*
*and the Putative Classes*